**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

**MICHAEL M. THOMPSON**

       **Petitioner,**

v.                                    **Case No.:  5:13-cv-15862**

**JOEL ZIEGLER, Warden,
Federal Correctional Institution-Beckley**

       **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

       Pending before the Court are Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 1), and Respondent's Response to the Order to Show Cause and Respondent's Supplemental Response to the Order to Show Cause, wherein Respondent moves for the petition to be dismissed. (ECF Nos. 9 & 14). This case is assigned to the Honorable Irene C. Berger, United States District Judge, and was referred to the undersigned United States Magistrate Judge by Standing Order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 be **DENIED**, that Respondent's request for dismissal be **GRANTED**, and that this action be **DISMISSED**, with prejudice, and removed from the docket of the Court.

## I.   <u>Procedural History</u>

Petitioner Michael M. Thompson ("Thompson") is currently an inmate at the Federal Correctional Institution in Beckley, West Virginia ("FCI Beckley"). (ECF No. 9-1 at 2). After pleading guilty to one count of armed robbery and one count of robbery in the Superior Court of the District of Columbia on March 25, 1996, Thompson was sentenced to a three-to-nine-year term of imprisonment on the armed robbery count and a two-to-six-year term of imprisonment on the robbery count, with each sentence to run consecutively. (*Id.* at 15). On September 27, 2002, Thompson was released on parole with 3003 total days remaining on his sentence. (*Id.* at 17, 23). Thompson then violated his parole and was arrested on a parole violator warrant on August 14, 2003. (*Id.* at 17, 25-26). On November 15, 2003, the United States Parole Commission ("USPC") issued a Notice of Action that revoked Thompson's parole, gave Thompson no credit for time spent on parole, and continued Thompson to a presumptive parole date of August 14, 2004 after the service of twelve months' imprisonment.[1] (*Id.* at 28). At the time that Thompson's parole violator sentence began on August 14, 2003, he had 3002 days remaining on his total sentence. (*Id.* at 3).

On July 13, 2004, Thompson was transferred from the Federal Correctional Institution in Gilmer, West Virginia, to the Bannum Residential Reentry Center ("Bannum RRC") in anticipation of parole.[2] (*Id.* at 3, 37). On July 21, 2004, less than one month before his presumptive parole date, Thompson escaped from the Bannum

---

[1] On August 5, 1998, the USPC was given exclusive jurisdiction and authority over parole decisions for D.C. Code felony offenders. D.C. Code § 24-131(a). The previous entity that possessed jurisdiction over such decisions, the Board of Parole of the District of Columbia, was abolished. *Id.* at § 24-131(b).

[2] Thompson's presumptive parole date was converted to an effective parole date on February 27, 2004. (ECF No. 9-1 at 67).

RRC. (*Id.* at 40). He was apprehended on September 24, 2004 after committing two new offenses: robbery and carrying a dangerous weapon. (*Id.* at 3-4). On September 28, 2004, based on Thompson's escape, the USPC issued a notice of action stating: "Reopen and retard parole effective date of August 14, 2004 and schedule for Rescission Hearing, upon return to a Bureau of Prisons Facility and receipt of an in person DHO [Discipline Hearing Officer] report."[3] (*Id.* at 43).

After pleading guilty to one count of robbery and one count of carrying a dangerous weapon arising out of his September 2004 arrest, on February 24, 2005, Thompson was sentenced in the Superior Court of the District of Columbia to eight years' imprisonment on the robbery count and three years' imprisonment on the carrying a dangerous weapon count, the latter sentence to run consecutive to the former and to any other sentence, giving him a combined sentence of 132 months imprisonment.[4] (*Id.* at 13). As a result of these convictions, the USPC issued another notice of action on April 19, 2005, which amended the September 2004 notice of action and stated: "The Commission will also consider the new criminal behavior committed while on escape status. All other information on the Notice of Action dated September 28, 2004, remains the same." (*Id.* at 45). However, neither a disciplinary hearing related to Thompson's escape from Bannum RRC, nor a parole rescission hearing had taken

---

[3] "'Retard' is a term of art in the parole context and means to postpone a presumptive parole date." *Espinoza v. Sabol*, 558 F.3d 83, 85 (1st Cir. 2009).

[4] The Bureau of Prisons Program Statement 5880.33, titled "District of Columbia Sentence Computation Manual," (July 9, 2010), details how D.C. Superior Court sentences should be calculated. (ECF No. 9 at 7; ECF No. 9-1 at 57-58). The Program Statement notes that under the Sentencing Reform Amendment Act ("SRAA"), D.C. Code § 24-403.01 (formerly D.C. Code § 24-203.1, as cited in the Program Statement), sentences imposed for offenses committed on or after August 5, 2000 cannot be combined with any other type of sentence. (*Id.* at 58). Because Thompson's February 2005 sentence was an SRAA sentence, it could not be combined with his parole violator sentence. As such, Thompson was required to serve his parole violator sentence before his February 2005 sentence could begin. Program Statement 5880.33 may be accessed in PDF form at: www.bop.gov/policy/progstat/5880_033.pdf

place by the time that Thompson filed his habeas petition on June 26, 2013. (ECF No. 1 at 6; ECF No. 9-1 at 60-61, 67-68).

In his petition, Thompson raises two claims:

1. The Bannum RRC and the Bureau of Prisons "unjustifiably failed to conduct a disciplinary hearing" for Thompson's escape, which resulted in a "gross miscalculation in the old law and new law sentences imposed in the D.C. Superior Court." (ECF No. 1 at 6).

2. Thompson's constitutional rights under the Fifth and Fourteenth Amendment have been violated because he is entitled to a final parole revocation hearing and a subsequent sentence calculation after that hearing. (*Id.*)

Simply put, Thompson complains that without conducting any sort of hearing, the Federal Bureau of Prisons ("BOP") decided to begin his "new" 132-month sentence on January 4, 2012, the day his "old" sentence imposed in March 1996 would have expired *if* he had been required to serve **the full term** of that sentence. Thompson alleges that this sentence calculation has no basis in fact, because no due process hearing was held; therefore, no determination was made that he was required to serve the full term of his "old" sentence. For relief, Thompson requests that the Court "issue an order to the Federal Bureau of Prisons to either squelch the incident report for escape, or immediately conduct a DHO hearing at FCI Beckley and forward the DHO findings immediately to the U.S. Parole Commission." (ECF No. 1 at 8; *see also* ECF No. 2 at 18).

After reviewing the petition, on July 8, 2013, the undersigned ordered Respondent to answer or respond to the application setting forth any reason why the relief sought by Thompson should not be granted. (ECF No. 6). Respondent filed a response to the undersigned's order on August 20, 2013, requesting that the petition be dismissed as moot. (ECF No. 9 at 1). Respondent noted that the BOP had calculated that Thompson's parole violator sentence expired on January 4, 2012, and his February

2005 sentence began to run at that time, which provided Thompson a projected release date of August 4, 2021.[5] (*Id.* at 4-5). Respondent explained that a disciplinary hearing related to the escape was never conducted because the incident report for the escape was expunged by the staff at the United States Penitentiary in Big Sandy, Kentucky, after the staff there was unable to locate a "discipline packet" for the incident. (ECF No. 9-1 at 61; ECF No. 9 at 7). Respondent further revealed that because the escape charges were expunged, the USPC never received a DHO report, and therefore, a rescission hearing was never scheduled in Thompson's case. (ECF No. 9 at 7). Finally, Respondent reported that Thompson had been placed on the USPC's October 2013 docket for a rescission hearing at FCI Beckley to determine whether Thompson's parole effective date should be rescinded, *nunc pro tunc*, and if so, whether an adjusted reparole date should be set.[6] (*Id.* at 8; ECF No. 9-1 at 68, 73). Accordingly, Respondent asserted that the relief Thompson requested was fulfilled because he was going to receive a rescission hearing after which his sentence would be recalculated, and thus, the petition should be dismissed for mootness. (ECF No. 9 at 8). Thompson filed a reply brief wherein he objected to dismissal and insisted that his sentence could not be correctly calculated without a parole revocation hearing being held first. (ECF No. 12 at 4, 6-8). In addition, for the first time, Thompson contended that the BOP failed to account for good time

---

[5] In computing the full-term expiration date of the parole violator sentence, the BOP began with August 14, 2003, which was the day that Thompson was arrested on a parole violator warrant. (ECF No. 9-1 at 4). At that point, Thompson had 3002 days remaining on his parole violator sentence. (*Id.*) The 332 days that Thompson spent on parole were not credited toward the parole violator sentence nor were the sixty-four days that Thompson spent in escape status, from July 22, 2004 to September 23, 2004. (*Id.*)

[6] In an August 9, 2013 memorandum from USPC General Counsel Rockne Chickinell to USPC Case Operations Administrator Stephen Husk, Mr. Chickinell explained that "Thompson has a reasonable claim that he *may* be injured by the Commission's failure to conduct a rescission hearing on his violator term. At least, he can argue that had we conducted a timely hearing he could have received an adjusted reparole date and started to serve his 132-month term at a date earlier than January 4, 2012." (ECF No. 15 at 23) (emphasis in original).

credits that he earned from his initial incarceration on March 25, 1996 through September 27, 2002, when he was paroled, and that the USPC no longer possessed jurisdiction to hold any hearing. (*Id.* at 9-12). In addition to raising new arguments in his reply brief, Thompson also altered his request for relief and asked only that the Court issue an order directing the BOP to recalculate the sentence computation data sheet so that it reflects his February 2005 sentence began running on September 24, 2004, when he was arrested for the offenses underlying that sentence. (*Id.* at 12).

On May 28, 2014, the undersigned ordered Respondent to file a supplemental brief updating the Court as to any hearings that were to have occurred. (ECF No. 13 at 1). Thompson was invited to file a supplemental reply to Respondent's brief. (*Id.* at 1-2). On June 4, 2014, Respondent filed his supplemental brief and informed the Court that the USPC conducted a rescission hearing in Thompson's case on February 19, 2014. (ECF No. 14 at 1). Respondent attached a March 25, 2014 notice of action from the USPC ordering: "Rescind parole grant effective date of August 14, 2004. Continue to expiration. This requires the additional service of 88 months, plus the time in escape status." (ECF No. 14-2 at 2). Respondent asserted that based on this notice of action, the sentence computation in Respondent's first brief was correct because Thompson was required to serve the entirety of his parole violator sentence before his February 2005 sentence could begin. (ECF No. 14 at 2; ECF No. 14-1 at 3).

In his supplemental response brief, Thompson cites case law and a number of statutes related to parole *revocation* proceedings and parole violator warrants, which, as spelled out below, are not at issue here. (ECF No. 15 at 5-14, 16, 19). Thompson again points out that he has never received a disciplinary hearing for the escape incident. (*Id.* at 15, 17). In addition, Thompson avers that the USPC did not have jurisdiction to

conduct a rescission hearing at such a late date and that the USPC's decision after the February 19, 2014 hearing should be set aside. (*Id.* at 19-20).

## II.   <u>Discussion</u>

Habeas corpus is the appropriate and exclusive remedy for a prisoner to attack the validity or duration of his confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). Where a prisoner seeks "immediate release or a speedier release" from imprisonment, the sole remedy is a writ of habeas corpus. *Id.* Under federal law, there are different forms of habeas corpus petitions, including 28 U.S.C. §§§ 2241, 2244, and 2255; here, Thompson seeks relief under section 2241. A habeas corpus petition may be brought under section 2241 to challenge the "execution" of a sentence, rather than the sentence itself. *United States v. Little*, 392 F.3d 671, 679 (4th Cir. 2004). Typical challenges to the execution of a sentence under section 2241 include "the administration of parole" and "computation of a prisoner's sentence by prison officials." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001). In order to be entitled to habeas relief under section 2241, a prisoner must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). With these principles in mind, the undersigned turns to the specific issues raised by Thompson's petition.

### A. Failure to Hold a Disciplinary Hearing after Thompson's Escape

In his first ground for relief, Thompson asserts that Bannum RRC and the BOP have "unjustifiably failed" to hold a disciplinary hearing on his escape from Bannum RRC. (ECF No. 1 at 6). In his brief accompanying his petition, Thompson alleges that the BOP has created a liberty interest in the procedures contained in 28 C.F.R. §§ 541.7-541.8 and Chapter Four of BOP Program Statement 5270.09. (ECF No. 2 at 6-11). Title

28 C.F.R. § 541.7 sets out the process to be followed when a Unit Discipline Committee ("UDC") is convened to review an incident report regarding an inmate, and where the incident is sufficiently serious, such as an escape, or the inmate's underlying conviction is of a certain type, the regulation requires the UDC to refer the incident to a DHO. 28 C.F.R. § 541.7(a); *see also* 28 C.F.R. §§ 541.3-541.4 (setting forth severity levels for certain acts and types of underlying convictions that require referral to DHO in accordance with section 541.7(a)(4)). Title 28 C.F.R. § 541.8 outlines the procedures that are required for a hearing before a DHO. Chapters Four and Five of BOP Program Statement 5270.09, titled "Inmate Discipline Program," expound upon the procedures for both UDC and DHO hearings.[7] Thompson maintains that the Bannum RRC's and the BOP's alleged failure to follow these regulations has resulted in a miscalculation of his sentence because it would be impossible for BOP officials to correctly determine his sentence without first taking into account any sanctions imposed by a DHO. (ECF No. 2 at 13).

The Due Process Clause of the Fifth Amendment mandates that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Imprisonment for a crime does not completely divest a person of due process protections. *Wolff v. McDonnell*, 418 U.S. 539, 555-56, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). "In order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (markings omitted).

---

[7] Program Statement 5270.09 may be accessed at: www.bop.gov/policy/progstat/5270_009.pdf

Thompson insists that he was entitled to receive certain procedural protections from the BOP when captured after his escape. However, Thompson's argument falls short because he cannot show that he has suffered any constitutional deprivation even if the BOP failed to follow the regulations cited by Thompson. Before process becomes due, there must first be a deprivation of an underlying substantive interest or right. *Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S. Ct. 1741, 75 L. Ed. 2d 813 at 250 ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."), *abrogated on other grounds by Sandin v. Conner,* 515 U.S. 472, 481-84, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). Where no deprivation has occurred, a prisoner does not possess a liberty interest in procedure for procedure's sake. *Olim*, 461 U.S. at 251 n.12 ("Other courts agree that an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause."); *Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993) ("[I]nmates do not have a protected liberty interest in the procedures themselves, only in the subject matter to which they are directed."). As the United States Court of Appeals for the D.C. Circuit pointed out, creating a liberty interest in procedural rules results in a string of never-ending hearings, or in other words, a prisoner could claim that a hearing must take place before being deprived of a hearing. *Brandon v. District of Columbia Bd. of Parole*, 823 F.2d 644, 648 (D.C. Cir. 1987). Here, the only deprivation alleged by Thompson in relation to this claim is that he never received a DHO hearing. As noted by the Supreme Court in *Olim*, the expectation of receiving a hearing, without a substantive interest or right underlying the purpose of the hearing, does not create a protected liberty interest. 461 U.S. at 251 n.12. Thompson has not alleged any deprivation, such as the BOP imposing disciplinary action or punishment against him

without first providing him with a hearing. Without a corresponding deprivation of life, liberty, or property, Thompson was entitled to no due process protections after being captured. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013).

To the extent that Thompson argues that the purported miscalculation of his sentence is the deprivation that he suffered, he has not provided a valid explanation of how a disciplinary hearing would have altered his sentence calculation. The only process that had any effect on Thompson's 1996 sentence computation was the parole rescission hearing. While the USPC did state in a notice of action that it intended to schedule the rescission hearing after it received a DHO report related to the escape, Thompson has not set forth any legal basis for his contention that the rescission hearing could not take place without the USPC first receiving a DHO report. According to Thompson, the BOP was required to hold the disciplinary hearing in order for the USPC to decide the appropriate action to take for Thompson's "parole violation" of escaping, "and only then would it be possible for the BOP to accurately calculate his sentence." (ECF No. 15 at 18). However, this argument is fundamentally flawed because Thompson was not on parole when he escaped, thus his escape was not a "parole violation." Accordingly, there is simply no basis upon which to conclude that the receipt of a DHO report was a mandatory prerequisite to the USPC conducting a parole rescission hearing. Moreover, there is no reason to believe that had a DHO report been issued, the USPC's decision to rescind Thompson's parole effective date would have been any different given the uncontroverted facts surrounding Thompson's escape. Thompson was serving a parole violator sentence at the time of his escape, and while on escape status, he committed two more significant crimes. None of these facts were particularly favorable to Thompson.

Finally, Thompson has not alleged that he was unable to present evidence or arguments at his rescission hearing that he would have been able to present at a DHO hearing.[8] While the BOP failed to afford Thompson a disciplinary hearing related to his escape, he suffered no punishment from the BOP stemming from the escape, and therefore no deprivation of life, liberty, or property by the BOP in response to the escape.[9] *See Newsome v. O'Grady*, No. 89-C-8992, 1992 WL 245606, at *3 (N.D. Ill. Sept. 18, 1992) (recognizing distinction between actual liberty interest in "not having discipline imposed without a hearing" and prisoner's claimed liberty interest in the hearing itself). Accordingly, this claim fails.[10]

### B. Failure to Hold a Parole Rescission Hearing Prior to February 2014

In his second ground for relief, Thompson asserts that he is entitled to a parole revocation hearing under the Fifth and Fourteenth Amendments to the United States Constitution. (ECF No. 1 at 6). He also contends that after the parole revocation hearing occurs, he is entitled to have his sentence recalculated. (*Id.*) In his response and supplemental response to the show cause order, Respondent argues that this claim is

---

[8] The harmless error standard may apply where a hearing that should be held is not. *See United States v. Jackson*, 69 F. App'x 630, 632 (4th Cir. 2003) (applying harmless error standard where district court may have "technically" violated statute by not holding hearing to determine existence of defendant's prior convictions); *see also United States v. Ervin*, 540 F.3d 623, 631 (7th Cir. 2008) (collecting cases where harmless error analysis was applied to failure to hold hearings). *But see Huntsman v. Perry Local Schools Bd. of Educ.*, 379 F. App'x 456, 463 (6th Cir. 2010) (citing cases where courts held denial of hearing could not be harmless error). Although, the issue need not be resolved here because Thompson has not demonstrated that a due process violation occurred when the BOP failed to hold a disciplinary hearing. In other words, Thompson has not established any error through this claim, which is a prerequisite to harmless error analysis.

[9] One consequence of Thompson's escape was that he could not receive credit for the time that he spent in escape status. (ECF No. 9-1 at 3). However, Thompson does not challenge the BOP's calculation in this regard.

[10] Given that a hearing conducted by a DHO never occurred, it seems that the USPC would not have possessed a DHO report related to the escape incident at the time of its decision. However, throughout these proceedings, Thompson has not denied that he escaped from Bannum RRC as alleged, and it is unlikely that he disputed that allegation at his rescission hearing.

moot because a parole rescission hearing was conducted by the USPC in February 2014 and resulted in a finding that Thompson's sentence calculation is correct. (ECF No. 9 at 8; ECF No. 14 at 1-2). Since Thompson received the relief he requested, no case or controversy remains for the court to resolve. Therefore, the habeas petition should be dismissed.

In his most recent filing, Thompson abandons his original request for relief. (ECF No. 15). Instead, he now claims that the USPC's jurisdiction over the issue expired on January 4, 2012, the date on which the full term of his "old" sentence expired. He acknowledges that the USPC held a hearing on February 19, 2014, but contends that the hearing was invalid because the USPC did not have jurisdiction to conduct the hearing. Given that the hearing was unauthorized, the resulting decision (to rescind his parole, allow his old sentence to continue to expiration, and calculate his new sentence to begin on January 4, 2012) is also invalid. Therefore, Thompson asks the Court to issue an Order directing the BOP to recalculate Thompson's sentence computation sheet, making it reflect that the 132-month sentence imposed on February 24, 2005 began to run on either the day it was imposed, or on the day of his arrest, September 24, 2004. (ECF No. 15).

Preliminarily, the undersigned notes that many of the statutes and cases that Thompson cites in his brief relate to the execution of parole violator warrants and parole *revocation* proceedings. However, those statutes and cases are inapplicable here because, at the time of his September 2004 arrest, Thompson **was not on parole**. After Thompson's parole was revoked in November 2003, he had never been reparoled. The USPC set a presumptive parole date of August 14, 2004, (ECF No. 9-1 at 28), which was converted to an effective parole date on February 27, 2004. (*Id.* at 67). However,

Thompson escaped from Bannum RRC on July 21, 2004, before reaching his effective parole date, and this prevented him from receiving a certificate of parole. (*Id.* at 40). A grant of parole is not operative until a certificate of parole has been delivered to the prisoner, and the prisoner has signed that certificate. 28 C.F.R. § 2.86(e). Until the time that a parole certificate is issued to the prisoner, a prisoner is not on parole. *Kalady v. Booker*, 104 F.3d 367, 1996 WL 740837, at *3 (10th Cir. Dec. 27, 1996) (unpublished table decision); *see also* 28 C.F.R. § 2.86(b) (permitting USPC to reconsider grant of parole prior to prisoner's actual release on parole). Because there is no evidence that Thompson ever received a certificate of parole, he was never reparoled, and therefore, he was never entitled to a parole *revocation* hearing. *See Tippins v. Luther*, 869 F. Supp. 331, 334-35 (W.D. Pa. 1994) (finding petitioner never became parolee because he escaped halfway house and never received certificate of parole, so revocation hearing was never necessary). The fact that Thompson was never reparoled also explains why a parole violator warrant was never issued for his arrest.[11] Thus, rescission was the appropriate action for the USPC to pursue.

Still, the USPC did clearly run afoul of the rescission hearing regulation. According to the regulation, upon the USPC's receipt of "new and significant information concerning the prisoner," the USPC is permitted to reopen a prisoner's case and postpone parole for up to 120 days without a hearing, or rescind the parole date. 28 C.F.R. § 2.86(b). Section 2.86(b), which applies to D.C. Code offenders, does not contain a time limitation for conducting a rescission hearing; although, a fair reading of section 2.86(b) seems to indicate that a rescission hearing should be scheduled by the time that

---

[11] An apprehension request was issued by Baltimore Community Corrections Manager James Morgan after Thompson escaped from Bannum RRC, but that form was not a parole violator warrant. (ECF No. 9-1 at 40).

the allowable period of postponement expires, or more particularly, after 120 days of postponing the parole effective date.[12] The USPC issued a notice of action on September 28, 2004, reopening and postponing Thompson's parole effective date of August 14, 2004.[13] (ECF No. 9-1 at 71). A rescission hearing was to be scheduled upon Thompson's return to a BOP facility and receipt of a DHO report. (*Id.*) On April 19, 2005, the USPC issued another notice of action, amending the previous notice of action and stating that the USPC would also consider Thompson's criminal behavior while on escape status. (*Id.* at 72). However, a rescission hearing was not held until February 2014, which seems contrary to the requirements of 28 C.F.R. § 2.86(b). (ECF No. 14-2 at 2).

Nevertheless, relative to any due process issue, Thompson has not shown that he possessed a liberty interest in being reparoled and having a rescission hearing before his parole was rescinded. To the contrary, the Supreme Court has held that a prisoner possesses no liberty interest in parole and that a liberty interest is not created even where a specific parole date is set. *Jago v. Van Curen*, 454 U.S. 14, 14-15,17, 21, 102 S. Ct. 31, 70 L. Ed. 2d 13 (1981); *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979). *But see Tippins*, 869 F. Supp. at 336-37 (citing Second Circuit precedent and holding that prisoners have some degree of due process protection in regard to parole rescission). The D.C. Circuit,

---

[12] A similar regulation that applies to United States Code prisoners (as opposed to D.C. Code prisoners) states that the USPC may schedule a rescission hearing "on the next available docket at the institution or on the first docket following return to a federal institution from a community corrections center or a state or local halfway house." 28 C.F.R. § 2.34(a).

[13] In reopening and postponing Thompson's parole effective date, the September 2004 notice of action cited 28 C.F.R. § 2.28, which pertains to the reopening of cases based on new information. (ECF No. 9-1 at 71). However, that regulation seems to only apply to United States Code prisoners. *See* 28 C.F.R. § 2.89 (listing sections of regulations that apply to both United States Code prisoners and D.C. Code prisoners and excluding section 2.28); *Boling v. Rivera*, No. 4:10-2957, 2011 WL 6182124, at *8 n.17 (D.S.C. Dec. 13, 2011). 28 C.F.R. § 2.86, which applies to D.C. Code offenders, was correctly cited in the April 2005 amended notice of action. (ECF No. 9-1 at 72).

applying D.C. law and addressing D.C. parolees, has agreed that the D.C. parole system does not create a liberty interest in parole. *Ellis v. District of Columbia*, 84 F.3d 1413, 1420 (D.C. Cir. 1996); *see also Johnson v. District of Columbia*, ___ F. Supp. 3d ___, 2014 WL 4443428, at *5 (D.D.C. Sept. 10, 2014) ("[I]t is established that D.C. prisoners do not have a constitutionally protected liberty interest in being released to parole."); *Johnson v. United States*, 590 F. Supp. 2d 101, 109 (D.D.C. 2008) (recognizing under D.C. law prisoner possessed no liberty interest in parole based on initial order granting him parole and that such order was subject to rescission without affording prisoner due process). Other federal courts have arrived at similar holdings when applying D.C. law. *See, e.g.*, *Green v Schult*, No. 9:08-cv-00659, 2010 WL 2925729, at *3 (N.D.N.Y. July 20, 2010) (recognizing that under D.C. law prisoners do not acquire liberty interests in orders setting parole dates). Nor does a revoked parolee maintain a liberty interest in reparole after revocation. *Stewart v. Gaines*, 370 F. Supp. 2d 293, 296 (D.D.C. 2005) (finding no liberty interest in reparole under D.C. law); *Cherry v. Garraghty*, No. 02-cv-171, 2003 WL 23332751 (E.D. Va. Jan. 9, 2003) (explaining that under D.C. law a revoked parolee has no liberty interest in reparole) (citing *Brandon v. District of Columbia Bd. of Parole*, 823 F.2d 644, 647 (D.C. Cir. 1987)). Without a liberty interest at stake, Thompson cannot prevail on a due process claim.

Assuming that Thompson indeed possessed a liberty interest in a rescission hearing, the appropriate remedy for an untimely hearing is a writ of mandamus compelling the USPC to comply with the timeline required by its regulations. *See Darden v. United States Parole Comm'n*, No. 13-1380, 2014 WL 3702869, at *3 (D.D.C. July 28, 2014) (recognizing that appropriate remedy for untimely *revocation* hearing was writ of mandamus compelling USPC to comply with its regulations); *Simmons v.*

*O'Brien*, No. 7:07-cv-00193, 2007 WL 2669896, at *2 (W.D.Va. Sept. 6, 2007) (holding appropriate remedy for USPC's failure to hold timely rescission hearing is to compel USPC to hold rescission hearing). A due process claim may be asserted by a prisoner only if the delay in conducting a hearing has caused him prejudice. *Simmons*, 2007 WL 2669896, at *2 n.6; *Tippins*, 869 F. Supp. at 337; *cf. Werner v. Bureau of Prisons*, No. 90 Civ. 4841, 1991 WL 19989, at *3 (S.D.N.Y. Feb. 11, 1991) ("[S]ince [petitioner] has not alleged any prejudice from the delay in his rescission hearing, there is no basis for his claim that the Commission violated his due process rights.").

In this case, Thompson has neither argued, nor established that prejudice resulted from the USPC's delay in conducting a rescission hearing. For example, he has not argued that evidence or witnesses were unavailable due to the delay, or that his ability to present a defense was hindered by the delay. Indeed, there seems to be no material facts in dispute regarding the circumstances of Thompson's absence from Bannum RRC. As Thompson admits, he escaped; he was gone for approximately two months; he was arrested; and he was convicted of having committed a robbery with a dangerous weapon while he was on escape status. Because Thompson cannot establish that the USPC's lengthy delay in holding a rescission hearing prejudiced him, his due process claim evaporates. *See Rowe v. United States Bureau of Prisons*, 21 F.3d 428, 1994 WL 88825, at *1 (6th Cir. Mar. 17, 1994) (unpublished table decision) (holding that petitioner was not entitled to relief based on delay in conducting parole rescission hearing because he could not establish prejudice) (citing *Villarreal v. United States Parole Comm'n*, 985 F.2d 835, 837 (5th Cir.1993)); *Tippins*, 869 F. Supp. at 337.

In any event, Respondent is correct that, to the extent Thompson asked for a hearing in front of the USPC, his request for relief is moot because he was provided a

rescission hearing by the USPC on February 19, 2014. *See Johnson v. United States Parole Comm'n*, 51 F. App'x 471, 472 (4th Cir. 2002) (holding claim requesting revocation hearing was moot where revocation hearing was held after district court's order was issued); *Speight v. Johnston*, 969 F. Supp. 2d 10, 13 (D.D.C. 2013) (holding petition was moot where petitioner requested parole rescission hearing for relief and rescission hearing was held before court issued opinion). However, as previously stated, Thompson now insists that, due to its long delay in providing a hearing, the USPC was divested of jurisdiction to conduct the very hearing that his petition requested as a form of relief. (ECF No. 12 at 11-12; ECF No. 15 at 16-20). In support of his position, Thompson cites a May 6, 2013 e-mail from USPC Hearing Examiner Donna McLean wherein she states that the USPC no longer possesses jurisdiction over Thompson because his parolable sentence expired on January 4, 2012. (ECF No. 12 at 15-16). Consequently, the issue of delay between Thompson's September 2004 arrest and his February 2014 rescission hearing will be addressed.

Title 18 U.S.C. § 4210(b) directs that, absent special circumstances, the USPC's jurisdiction over a parolee terminates no later than the expiration of the maximum term for which the prisoner was sentenced. *See Owens v. Gaines*, 219 F. Supp. 2d 94, 102 (D.D.C. 2012) (citing 18 U.S.C. § 4210(b) in D.C. Code offender case).  This statute supports USPC Hearing Examiner McLean's belief that the USPC no longer possessed jurisdiction over Thompson after January 4, 2012—the date that Thompson's parole violator sentence expired. (ECF No. 12 at 15-16). Nonetheless, the USPC's General Counsel, Mr. Chickinell, recommended that a rescission hearing take place so that the USPC could consider "a possible *nunc pro tunc* reparole date after applying the appropriate rescission guidelines." (*Id.* at 17-18). Respondent takes the position that the

USPC had jurisdiction to hear the matter; particularly, as Thompson requested the hearing. Thompson, on the other hand, cites to a number of cases purportedly supporting the proposition that jurisdiction was lacking; however, once again, the cases involve the execution of parole violator warrants and parole revocation proceedings that are inapposite here as he was not on parole when he escaped from Bannum RRC. Thompson fails to cite a single case where a delay in conducting a rescission hearing has been cause for a federal court to hold that the USPC lacked jurisdiction to convene the hearing when a parole issue concerning an expired sentence affected computation of the unexpired sentence being served by the prisoner.

Even if the USPC did not possess jurisdiction when the rescission hearing was conducted, there is no logical reason to conclude that the remedy for the USPC's lapse of jurisdiction would be to declare that Thompson was reparoled on his effective reparole date in August 2004. The status quo at the time of Thompson's escape was that he was a prisoner with an effective reparole date. However, Thompson was never reparoled due to his own actions, and he did not possess any due process interest in being reparoled.[14] Because Thompson was never reparoled, to maintain the status quo, Thompson should have been required to serve his full term of imprisonment. *See* D.C. Code § 24-406(a) (providing that when parole is revoked, a prisoner, unless subsequently reparoled, must

---

[14] On the other hand, the USPC maintains an interest in ensuring that reparole is not actually granted where new information suggests that the prisoner is not a suitable candidate for parole. See 28 C.F.R. § 2.86(a) ("When a parole effective date has been set, actual release on parole on that date shall be conditioned upon the individual maintaining a good conduct record in the institution or prerelease program to which the prisoner has been assigned."); *id.* at § 2.86(b) (permitting USPC to reconsider grant of parole prior to actual release based on new information concerning prisoner); *id.* at § 2.86(d) (stating where USPC is notified that prisoner has committed serious disciplinary infraction prior to parole release date, prisoner shall not be released until the USPC advises institution to do so); *Christopher v. United States Bd. of Parole*, 589 F.2d 924, 931 (7th Cir. 1978) ("While the Government should be alert and desirous of not keeping imprisoned a person beyond the time when all purposes of incarceration have been served it also has a very definite interest in rescinding an improper determination because it is the public which suffers when a convicted criminal, who should not have, reaches the freedom of an effective parole.").

serve the remainder of original sentence imposed). Thompson essentially requests that the Court grant him reparole *nunc pro tunc*, so that his February 2005 sentence is held to have begun on September 24, 2004, when he was arrested for his post-escape crimes. However, Thompson never earned reparole. Such a windfall remedy to reward Thompson's behavior in escaping and committing new crimes would be an unwise precedent to set.

Given the unique circumstances of this case, there is nothing in the way of authority addressing this issue and what remedy, if any, is appropriate. Yet, the USPC's belated hearing seems to be sufficient. Even though Thompson's actions prevented his reparole and he possesses no liberty interest in reparole or a rescission hearing, the USPC provided him with a rescission hearing and apparently considered a *nunc pro tunc* reparole date using the rescission guidelines. (ECF No. 9-1 at 68; ECF No. 12 at 17-18). Applying the rescission guidelines, the USPC determined that Thompson was required to continue his sentence until expiration based on his escape and his post-escape convictions. Thompson has not demonstrated that this result would have been different had the rescission hearing taken place at an earlier date. For these reasons, Thompson is not entitled to the relief that he seeks in making his jurisdictional claim.

### C. Good-Time Credit from March 25, 1996 to September 27, 2002

Finally, Thompson avers in his reply brief that the BOP has not properly calculated the expiration of his parole violator term because the calculation did not take into account the good-time credit that he earned between March 25, 1996 and September 27, 2002. (ECF No. 12 at 9-10). While this claim was not raised in Thompson's petition, the undersigned will address it. A prisoner has "no constitutional or statutory right to the restoration of good time credits, as such credits do not survive a

prisoner's release on parole. Rather, after parole is revoked, the acquisition of good time credit to advance a release date begins anew." *Brown v. United States Parole Comm'n*, 713 F. Supp. 2d 11, 14-15 (D.D.C. 2010) (internal markings and citations omitted); *see also* D.C. Code § 24-406(a) (stating that after parole revocation, a prisoner "shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him *after* his return to custody.") (emphasis added). Because Thompson's good-time credit reset when he was released on parole in September 2002 and his parole was subsequently revoked, the BOP could not consider any good-time credit earned prior to Thompson's release on parole when calculating the expiration of his parole violator term. Consequently, this claim fails.

### III.   **Proposal and Recommendation**

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows:

1. Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) be **DENIED**;

2. Respondent's request for dismissal (ECF Nos. 9 & 14) be **GRANTED**; and

3. That this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed

Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Berger, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner, Respondent, and any counsel of record.

**FILED:** December 15, 2014

Cheryl A. Eifert
United States Magistrate Judge