IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

MICHAEL M. THOMPSON,

        Petitioner,

v.    CIVIL ACTION NO.   5:13-cv-15862

JOEL ZIEGLER,

        Respondent.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Petitioner's *Application Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody* (Document 1) and accompanying *Memorandum of Law in Support of Petition Seeking Issuance of Writ of Habeas Corpus Pursuant to Title 28 United States Code § 2241* (Document 2), filed on June 26, 2013.  By *Standing Order* (Document 4) entered on June 27, 2013, this action was referred to the Honorable Cheryl A. Eifert, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636.  On December 15, 2014, the Magistrate Judge submitted a *Proposed Findings and Recommendation* (PF&R) (Document 16), wherein it is recommended that this Court deny the Petitioner's § 2241 motion.  Objections to the Magistrate Judge's PF&R were due by January 2, 2015, but an extension was granted by this Court's Order (Document 18).   The Petitioner filed his objections on February 9, 2015.

## FACTUAL AND PROCEDURAL HISTORY

Magistrate Judge Eifert's PF&R sets forth in detail the procedural and factual history surrounding the Petitioner's motion. The Court now incorporates by reference those facts and procedural history, but in order to provide context for the ruling herein, the Court provides the following summary.

The Petitioner claims that the Bureau of Prisons (BOP) and United States Parole Commission (USPC) "egregiously failed in its responsibilities to conduct the requisite and obligatory Institution Disciplinary Hearing . . . upon [Petitioner's] return to federal custody . . . following his walkaway escape from a halfway house and the commission of 'new' criminal conduct in the District of Columbia." (Document 2 at 1-2.) He claims that this resulted in a "gross miscalculation in the old law and new law sentences imposed in the D.C. Superior Court" and thus, his Fifth and Fourteenth Amendment rights have been violated because no final parole revocation hearing ever took place nor was a proper subsequent sentence calculation computed. (Document 1 at 6.) Simply put, the Petitioner claims that the BOP erroneously calculated his sentence by assuming that the USPC would have required him—had a hearing been held—to serve out the entirety of his original sentence before the new sentence of one hundred thirty-two (132) months of imprisonment could begin. He requests that this Court "issue an order . . . to either squelch the incident report for escape, or immediately conduct a [Discipline Hearing Officer] hearing at FCI Beckley and forward the DHO findings immediately to the USPC" so that a rescission hearing could take place. (Document 1 at 8.)

*A. "Old" Sentence*

The Petitioner was sentenced on March 25, 1996, to a nine year term of imprisonment for violating District of Columbia Code Sections 22-2901 and 22-3202.[1] On September 27, 2002, the Petitioner was released on parole with 3003 days remaining on his sentence, but he violated his parole and was arrested on August 14, 2003. The USPC issued a Notice of Action (First Notice) on November 15, 2003, that revoked Petitioner's parole, eliminated any credit for time spent on parole, and established a presumptive parole date of August 14, 2004, "after the service of 12 months" imprisonment for parole violations.[2] (Document 9-1 at 28.)

On or about July 13, 2004, the Petitioner was transferred to Bannum Residential Reentry Center in anticipation of the presumptive parole date of August 14, 2004, but at 10:15 a.m., on July 21, 2004, he escaped from the halfway house and committed robbery with a dangerous weapon. (Document 9-1 at 40.) He was apprehended on September 24, 2004, and on September 28, 2004, the USPC issued a Notice of Action (Second Notice) stating: "Reopen and retard parole effective date of August 14, 2004, and schedule for Rescission Hearing, upon return to a [BOP] Facility and receipt of an in-person DHO report." (Document 9-1 at 43.)

*B. "New" Sentence*

On February 24, 2005, the Petitioner was sentenced to one hundred thirty-two (132) months of imprisonment[3] in the Superior Court of the District of Columbia after pleading guilty to

---

[1] The Court notes that the Petitioner was sentenced to a three-to-nine-year term of imprisonment for armed robbery and a two-to-six-year term of imprisonment for robbery, with the latter sentence to run consecutively to the first. (*See* Document 9-1 at 2.)

[2] Specifically, the warrant was issued and parole ultimately revoked because the Petitioner had (1) used drugs, (2) failed to submit to drug testing, and (3) failed to report to community supervision officer as directed. (Document 9-1 at 28.) The Petitioner admitted to all of these allegations. (*Id.*)

[3] The Petitioner was sentenced to eight years' imprisonment for the robbery charge and three years' imprisonment for carrying a dangerous weapon, with the three year sentence to run consecutive to the former and to any other sentence, resulting in a combined sentence of one hundred thirty-two (132) months of imprisonment to be

3

one count of robbery and one count of carrying a dangerous weapon. The USPC issued another Notice of Action (Third Notice) on April 19, 2005, stating that "[t]he Commission will also consider the new criminal behavior committed while on escape status. All other information on the Notice of Action dated September 28, 2004 remains the same." (Document 9-1 at 45.)

    *C. Hearing*

No disciplinary hearing or parole rescission hearing ever took place until the Petitioner filed his instant § 2241 petition nearly a decade after his arrest and sentencing for conduct committed while on escape status. (Document 9-1 at 6061, 67-68.) On February 19, 2014, a rescission hearing finally took place, and afterwards, the USPC issued a Notice of Action (Fourth Notice) ordering: "Rescind parole grant effective date of August 14, 2004. Continue to expiration. This requires the additional service of 88 months, plus the time in escape status." (Document 14-2 at 2.) Thus, the United States contends that the sentence computation is correct because Petitioner "was required to serve the entirety of his parole violator sentence before his February 2005 sentence could begin." (Document 16 at 6) (citing Document 14 at 2).

As stated above, on June 26, 2013, the Petitioner filed his *Application Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody* and *Memorandum of Law in Support*. On July 8, 2013 the Magistrate Judge issued an *Order* (Document 6) requiring the Respondent to answer or otherwise respond to the habeas petition within forty-five (45) days. On August 20, 2013, the Respondent filed its *Response to the Order to Show Cause* (Document 9), together with several exhibits. In this response, the United States noted that the Petitioner's first sentence was correctly computed because he is "not entitled to receive credit for time he spent on parole, as his parole was subsequently revoked," and thus, he "had 3002 days remaining to be

---

served after the parole violator sentence. (*See* Document 9-1 at 13.)

served on his parole violation sentence as of August 13, 2003," resulting in "the full-term expiration date of the sentence as January 4, 2012." (Document 9 at 6.) The United States also pointed out that the Petitioner was scheduled to have a parole rescission hearing *nunc pro tunc* in October 2013, and thus, his habeas petition is moot due to the fact that he was receiving the relief he requested in his Petition. (*Id.* at 8-9.)

On October 11, 2013, *Petitioner's Reply Brief Setting Forth Objections and Arguments in Opposition to the Government's Order to Show Cause Brief Requesting This Court Dismiss Petitioner's § 2241 Petition* (Document 12) was filed. The Petitioner advanced the same complaints as in his first Petition, namely, that he did not receive (1) a disciplinary hearing regarding his escape from the halfway house or (2) a parole violation hearing in a timely manner. (See Document 12.) He avers that the failure to hold these two hearings resulted in the BOP erroneously calculating the date on which the one hundred thirty-two (132) month sentence would commence. (*Id.* at 1-2.) He also claims, for the first time,[4] that the BOP and USPC have failed to give him good-time credit from March 25, 1996 to September 27, 2002. (*Id.* at 9.) Oddly, the Petitioner requests that this Court "immediately issue an order directing an evidentiary hearing be conducted forthwith on the issues presented in the Petition for Writ of Habeas Corpus". However, under the section titled "Conclusion and Relief Sought," he requests that this Court issue an order directing the BOP to compute his sentence and begin running the one hundred thirty-two (132) month sentence "on September 24, 2004, the date of his arrest for robbery and carrying a dangerous weapon." (*Id.* at 2-3, 12.)

---

4      The Petitioner did not include any reference to good-time credit or computation of past good-time credit in his original § 2241 petition and memorandum in support. (*See* Documents 1 & 2.)

5

On May 28, 2014, the Magistrate Judge issued an *Order* (Document 13) requesting that the Respondent update the Court after the requisite hearing and determination by the USPC. On June 4, 2014, the Respondent filed its *Supplemental Response to the Order to Show Cause* (Document 14) together with several exhibits. The Respondent argued that "as a result of [February 19, 2014 rescission hearing], the parole effective date of August 14, 2004 was rescinded and the sentence should be continued to expiration." (Document 14 at 1-2) (citing Exhibit 1, Notice of Action dated March 25, 2014.) Thus, "Petitioner's sentence is therefore appropriately calculated and his Petition should be dismissed." (*Id.* at 2.)

The *Petitioner's Supplemental Reply Brief Containing Objections and Arguments to the United States Parole Commission's Supplemental Response to the Order to Show Cause Brief Filed on June 4, 2014 Following the Conclusion of the Parole Hearing* (Document 15) was filed on June 26, 2014. Simply put, he claims that the USPC no longer had jurisdiction over this matter and therefore, the rescission hearing and determination are invalid. On December 15, 2014, the Magistrate Judge issued her PF&R, wherein it was recommended that this Court deny the Petitioner's § 2241 Petition, grant the Respondent's request for dismissal, and dismiss the action with prejudice. (Document 16 at 20.) *Petitioner's Motion Seeking a Sixty Day Enlargement of Time in which to File a Traverse Brief Setting Forth Credible Objections to U.S. Magistrate Judge Cheryl A. Eifert's Proposed Findings and Recommendations Received by Petitioner on December 18, 2014* (Document 17) was filed on January 6, 2015, and this Court granted in part said motion in its January 15, 2015 Order (Document 18), giving the Petitioner twenty (20) days from the issuance of the order to file objections. *Petitioner's Traverse Brief Setting Forth Objections and Arguments to the Proposed Findings and Recommendations Issued by United States Magistrate*

6

*Judge Cheryl A. Eifert Asking This Court to Dismiss this Action with Prejudice and be Removed from the Docket of This Court at this Time* (Document 19) was filed on February 9, 2015.

## STANDARD OF REVIEW

This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982). When reviewing portions of the PF&R *de novo,* the Court will consider the fact that Petitioner is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

## DISCUSSION

*A. Magistrate Judge's PF&R*

The Magistrate Judge found that the § 2241 petition should be denied on multiple grounds. First, the Magistrate Judge concluded that while no disciplinary hearing was ever held for the Petitioner's escape charge, the Petitioner did not suffer a due process constitutional deprivation because "the expectation of receiving a hearing, without a substantive interest or right underlying the purpose of the hearing, does not create a protected liberty interest." (Document 16 at 9) (citing *Olim v. Wakinekona*, 461 U.S. 238, 251 n.12 (1983).) The Magistrate Judge noted that the

7

Petitioner "has not alleged any deprivation, such as the BOP imposing disciplinary action or punishment against him [for the escape] without first providing him with a hearing." (*Id.* at 9-10.) She then noted that to the extent the Petitioner is claiming the alleged miscalculation of his sentence as the requisite deprivation, "he has not provided a valid explanation of how a disciplinary hearing would have altered his sentence calculation." (*Id.* at 10.) The Magistrate Judge saliently pointed out that the Petitioner's escape was not a parole violation because he was not on parole when he escaped. "[Petitioner] was serving a parole violator sentence at the time of his escape, and while on escape status, he committed two more significant crimes." (*Id.*) The Magistrate Judge thus determined there was no deprivation of life, liberty, or property when the BOP failed to hold a disciplinary hearing over the escape charge. (*Id.* at 11.)

Regarding the Petitioner's assertion that he is entitled to a parole revocation hearing under the Fifth and Fourteenth Amendments, and then a sentence recalculation, the Magistrate Judge noted that this request for relief is now moot because such a hearing was held on February 19, 2014. (*Id.* at 12.) The Magistrate Judge found unpersuasive the Petitioner's newly-raised contention that the USPC lacked jurisdiction over his belated parole hearing because the underlying re-parole date expired on January 4, 2012. (*Id.*) She reiterated that the Petitioner was not on parole at the time of his September 2004 arrest, and thus, "he was never entitled to a parole *revocation* hearing," but instead a parole rescission hearing. (*Id.* at 13) (emphasis in original.)

The Magistrate Judge found that the USPC "did clearly run afoul of the rescission hearing regulation" because the "rescission hearing was not held until February 2014, which seems contrary to the requirements of 28 C.F.R. § 2.86(b)." (*Id.* at 14.) Again, however, she concluded that the Petitioner was not entitled to relief because he "has not shown that he possessed a liberty

8

interest in being re-paroled and having a rescission hearing before his parole was rescinded." (*Id.*) She string-cites Supreme Court of the United States and District of Columbia cases recognizing that prisoners possess no liberty interest in parole. (*Id.* at 14-15.) The Magistrate Judge reasoned that even assuming *arguendo* that the Petitioner possessed a liberty interest in a rescission hearing, the "appropriate remedy for an untimely hearing is a writ of mandamus compelling the USPC to comply with the timeline required by its regulations." (*Id.* at 15.) Building upon the notion that Petitioner has not suffered any prejudice for the lack of a timely parole rescission hearing, she concluded that "his due process claim evaporates." (*Id.* at 16.)

The Magistrate Judge concluded that the USPC retained jurisdiction over the parole rescission hearing—even though the original parole violator sentence of imprisonment was satisfied as of January 2012—because its General Counsel "recommended that a rescission hearing take place so that the USPC could consider 'a possible *nunc pro tunc* re-parole date after applying the appropriate rescission guidelines.'" (*Id.* at 17) (citing Document 12 at 17-18.)

Even if USPC jurisdiction was lacking, the Magistrate Judge noted that "there is no logical reason to conclude that the remedy for the USPC's lapse of jurisdiction would be to declare that [Petitioner] was re-paroled on his effective re-parole date in August 2004," and since Petitioner was never re-paroled, "to maintain the status quo, [Petitioner] should have been required to serve his full term of imprisonment." (*Id.* at 18) (citing D.C. Code § 24-406(a).) She reasoned that the Petitioner's requested relief of re-parole is inappropriate because "[s]uch a windfall remedy to reward [Petitioner's] behavior in escaping and committing new crimes would be an unwise precedent to set." (*Id.* at 19.) She concluded that the "belated hearing" that found him

9

inappropriate for re-parole was sufficient, and he has not "demonstrated that this result would have been different had the rescission hearing taken place at an earlier date."

The Magistrate Judge also addressed the Petitioner's newly raised claim that the BOP had failed to give him good-time credit from March of 1996 to September of 2002, pointing out that "after parole is revoked, the acquisition of good time credit to advance a release date begins anew." (*Id.* at 20) (citing *Brown v. United States Parole Comm'n*, 713 F. Supp. 2d 11, 14-15 (D.D.C. 2010) (internal marking and citations omitted in original))). "Because [Petitioner's] good-time credit reset when he was released on parole in September 2002 and his parole was subsequently revoked, the BOP could not consider any good-time credit earned prior to [his] release on parole when calculating the expiration of his parole violator term. Consequently, this claim fails." (*Id.* at 20.)

### *B. Petitioner's Objections*

The Petitioner objects to the conclusions reached by Magistrate Judge Eifert, and argues he has "correctly advanced" that the USPC and BOP "have inexcusably failed to conduct [the] necessary hearings in order to properly and accurately calculate the 'new' sentence imposed in the District of Columbia Superior Court in a timely manner," and that "numerous 'delays' have clearly resulted in numerous Due Process Clause violations under the Fifth Amendment to the United States Constitution." (Document 19 at 3)(quotations in original.) He contends that it "would have been impossible for BOP officials to accurately determine his 'new' sentence of 132 months imposed on February 24, 2005 . . . without first conducting a disciplinary hearing for his escape . . . .." (*Id.* at 3-4) (quotation in original.) He argues that the BOP incorrectly "assumed" that his old sentence would not expire until January 4, 2012, and stresses that neither the BOP nor the

Magistrate Judge can assume that the USPC "would have required [him] to serve the above-referenced 'old' law sentence to the full term date of January 4, 2012." (*Id.* at 4) (quotations in original.) He claims that this assumption prejudices him because the USPC might have decided that he did not have to serve the entire old sentence had he been afforded a hearing and opportunity to present his case for mitigation.

He asserts that the USPC lacked jurisdiction in the February 2014 hearing and that, in any event, this hearing did not cure any constitutional deprivations that had amassed over the previous nine years. (*Id.* at 4-5.) He objects to the Magistrate Judge's determination that he has not suffered any deprivation, and argues that his sentence was miscalculated and will result in him "serving an additional 7-8 years in federal prison!" (*Id.* at 6.) He argues that the hearing was necessary before the BOP could properly calculate that starting point of the one hundred thirty-two (132) month sentence, and cites *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) and *Board of Regents v. Roth*, 408 U.S. 564 (1972) for support. (*Id.* at 6-7.) He complains that no disciplinary hearing was ever held regarding his escape, and that this was error as well. (*Id.* at 7.) He also stresses the "indisputable fact [that] Petitioner still had to answer and explain his actions to the USPC for the 'unsatisfied sentence' in [the 1996 case]." (*Id.* at 8)(emphasis in original.)

He argues for the first time that the BOP violated due process protections because it did not award him good-time credit from 2004 to 2012. (*Id.* at 12-14.) He states that he has suffered an injury because had a parole rescission hearing taken place, he could have argued and received an adjusted re-parole date that potentially would have allowed his one hundred thirty-two (132) month sentence to start earlier than January of 2012. (*Id.* at 16.) He further argues that there was

11

"no need for [him] to demonstrate that he possessed a liberty interest" in re-parole because he had a "new" 132 month sentence to serve, but he did have a liberty interest in his "old" sentence. (*Id.* at 18.)

The Court finds the Petitioner's objections to be without merit. As an initial matter, the Court observes that the Petitioner regurgitated (often whole paragraphs) and re-styled his previous submissions into the instant objections. (See Documents 2, 12, 15, and 19.) There is little that the Petitioner specifically objects to beyond simple conclusory statements that he has suffered multiple due process deprivations and that the BOP has incorrectly calculated his sentence. However, to the extent they are specific protests, the Petitioner's objections to the Magistrate Judge's finding that he did not suffer a deprivation of any liberty interests are unpersuasive. The USPC blundered by not holding the disciplinary hearing or parole rescission hearing within the applicable timeframe.[5] No one contests this fact. Yet the Petitioner cites no cases that challenge the Magistrate Judge's finding that the appropriate relief (assuming a liberty interest was present) is a writ of mandamus compelling the USPC to hold the necessary hearing. The citations to *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) and *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) contained in the Petitioner's brief do not change this or otherwise obviate the conclusion that he was not on parole when he escaped, and therefore, the escape was not a parole violation subjecting the Petitioner to a parole revocation hearing.[6] The record reflects that such a hearing was held, and that the USPC determined that the Petitioner was

---

5    The Court finds it to be unacceptable that Petitioner was not afforded a hearing until February of 2014.
6    In *Mullane,* the Supreme Court held that "notice of judicial settlement of accounts required by New York Banking Law . . . is incompatible with the requirements of the Fourteenth Amendment as a basis for adjudication depriving known persons whose whereabouts are also known of substantial property rights," 339 U.S. at 320, while in *Roth*, the Supreme Court held that "summary judgment" for a non-tenured teacher claiming deprivation of property "should not have been granted, since [he] has not shown that he was deprived of liberty or property protected by the Fourteenth Amendment." 408 U.S. at 579. The Court notes both were civil cases.

not entitled to a new re-parole date, and that he had to serve the remainder of the "old" sentence before the "new" sentence could begin.[7] Thus, the Petitioner's habeas petition is mooted and otherwise resolved because he has received the procedural due process that he was entitled to, albeit extremely late.

The Court finds *Simmons v. O'Brien*, 2007 WL 2669896 (W.D.Va. 2007) (unreported), a case cited by the Magistrate Judge in the PF&R, particularly helpful to this analysis. There, the petitioner averred that he had been in federal custody "for over five years and ha[d] yet to receive a [parole] revocation hearing." 2007 WL 2669896 at * 1. Specifically, the petitioner was released to parole supervision on May 9, 1996, but was sentenced on October 2, 1996, to one hundred twenty (120) days of imprisonment for possessing marijuana. His parole was subsequently revoked for failure to comply with conditions of supervision. The petitioner was released to parole on January 12, 1998, but again "failed to comply with the conditions of his parole," and thereafter, his parole was revoked for the second time. The U.S. Parole Commission then recommended that petitioner be placed in a halfway house "for up to 120 days prior to his release date," which he was, until he "was placed on escape status after he failed to return to the halfway house after work." *Id.* The petitioner was then sentenced on February 23, 2004, to six (6) years of imprisonment for conduct committed "while he was on escape status from the halfway house." *Id.* Thereafter, on March 23, 2004, the Parole Commission

> issued a decision to reopen [petitioner's] case and schedule a hearing upon his return to custody to determine whether to rescind [his] pending parole date based upon his escape from the halfway

---

7 The Petitioner also failed to address objections to the finding that the failure to hold a DHO hearing was not a due process violation because the BOP did not sanction or punish the Petitioner for escaping, but only for the conduct committed while on escape status. Indeed, the record reveals that the BOP expunged the escape charge because the records were lost. (*See* Document 9-1 at 60-61.) In other words, the Petitioner has failed to show that he has suffered any constitutional deprivation when he was not afforded a DHO hearing.

13

> house. On June 17, 2004, the Parole Commission issued a notice of action placing [petitioner] on notice that it would consider his new criminal conduct at a rescission hearing.

*Id.* No rescission hearing ever took place. The petitioner then filed a habeas petition pursuant to 28 U.S.C. § 2241 claiming that his due process rights were violated "because of the[ ] failure to provide him with his fundamental right to a revocation hearing," and "that his term of imprisonment . . . is invalid." *Id.* at * 2 (internal citations and quotations omitted.) The respondent retorted that the petitioner "received a rescission hearing on June 28, 2007," and thus, the petitioner "is not entitled to release because of a delay in his hearing as he cannot demonstrate that he has been prejudiced by the delay." *Id.*

In dismissing the petitioner's habeas motion, the district court first noted that the petitioner was not on parole when he committed the new criminal activity because he had escaped from the halfway house, and therefore, he was not entitled to a parole revocation hearing, only a parole rescission hearing. *Id.* at fn. 4. The court then found that although "the hearing should have been conducted soon after Simmons returned to federal custody," the petitioner's claim "was rendered moot by the June 28, 2007 rescission hearing." *Id.* at * 2. The district court arrived at this conclusion after noting that "the appropriate remedy for the Parole Commission's failure to hold a timely hearing is for the court to compel the Parole Commission to hold the hearing," and because petitioner "received a rescission hearing on June 28, 2007," he "has received the only remedy available for his claim." *Id* (internal citations omitted.)

Notably, the Parole Commission found that the petitioner's "parole effective date of April 6, 2001, would be rescinded. His parole effective date was reset to August 6, 2004, *nunc pro tunc* to the consecutive six-year sentence." *Id.* at fn. 5 (internal quotations omitted.) The district

14

court found that the petitioner would "still not be entitled to relief" because he has not shown that he suffered "prejudice resulting from the delay of his rescission hearing" like "any unfairness in the hearing" or "that the delay caused prejudice to his defense at the rescission hearing." *Id.* at fn 6. The Court further determined that the failure to hold the rescission hearing "did not keep [petitioner] incarcerated any longer than if the hearing had been held immediately as [petitioner] is serving a lengthy sentence for new criminal offenses that he committed after he escaped." *Id* (internal citations omitted.)[8]

Here, though a parole rescission hearing was the relief he first sought, the Petitioner (now) does not like this result. That is unsurprising as the USPC determined in its belated hearing that the Petitioner was required to serve out the entirety of his "old" sentence. The Court finds unavailing his attempt, after the unfavorable result of his rescission hearing he originally requested, to argue that the USPC did not possess jurisdiction. The Petitioner does not claim that the parole rescission hearing was unfair or that the USPC did not follow the requirements mandated by statute—apart from the timing of the hearing. The delay in holding the rescission hearing did not keep Petitioner incarcerated any longer than if the hearing(s) had taken place within 120 days. Finally, a review of the record in this matter reveals that the Petitioner failed to bring a habeas petition challenging the failure to conduct a parole rescission hearing until June of 2013, or roughly 18 months after he completed his original D.C. sentence. In other words, he waited almost 18 months into the service of his "new" sentence to plead his case, even though the

---

8     The Fourth Circuit dismissed the petitioner's appeal via a *per curiam* opinion, finding that the petitioner failed to obtain a certificate of appealability showing that "reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable," even after the Fourth Circuit "independently reviewed the record and conclude[d] that [petitioner] has not made the requisite showing." *Simmons v. O'Brien*, 267 Fed.Appx. 264, *1 (4th Cir. 2008) (unpublished).

15

fact that the USPC had failed to act in accordance with statutory requirements regarding holding a parole rescission hearing was obvious and apparent to Petitioner, or *should have been*, years earlier.[9]

The Petitioner has not advanced any objection or argument that calls into question the determination that he was not entitled to any good-time credit he earned between March 25, 1996 and September 27, 2002, because "after parole is revoked, the acquisition of good time credit to advance a release date begins anew." (Document 16 at 20) (internal citations omitted.) Indeed, he declines to argue why he should be awarded good-time credit from 1996 to 2002 in his objections, but instead, <u>for the first time</u>, argues that the BOP failed to award him good-time credits from 2004 through 2012, an entirely different period of time. (*See* Document 19 at 11.) The Petitioner never complained about good-time credit allowance from 2004 to 2012 in any of his earlier, voluminous submissions. It was not raised until his objections, and thus, the Magistrate Judge never considered this period of time in her analysis. To the extent that the Petitioner is now arguing that he is entitled to good time credit for 2004 through 2012, he should consider the legal basis of such a claim and determine whether a separate, valid § 2241 petition should be filed to address the same.

In summation, this case is practically identical to the matter in *Simmons v. O'Brien*. The Court finds *Simmons* persuasive, and finds that the Petitioner's objections to be without merit. The objections are without merit because (a) the "old" contested sentence has expired and (b) a hearing was held finding that he had to serve out the full "old" sentence. Therefore, the BOP's calculations are correct. In light of the above, the Petitioner's request that this Court order the

---

9  The Court notes that the Petitioner avers "he did not become aware of the gross error in the calculation of his sentences until 2012." (Document 1 at 7.) He does not explain, however, how he found out about the alleged miscalculation in 2012, or why he did not discover the failure to hold the necessary hearing(s) until then.

16

BOP to recalculate his sentence—but only after also ordering it to begin the 132-month sentence on September 24, 2004 or February 24, 2005—should be denied. For these reasons, the Petitioner's objections to the PF&R regarding jurisdiction are **OVERRULED**.

## CONCLUSION

Wherefore, based on the findings herein, the Court does hereby **ORDER** that the Magistrate Judge's *Proposed Findings and Recommendation* (Document 16) dismissing the Petitioner's *Application Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody* (Document 1) be **ADOPTED**, that the *Petitioner's Traverse Brief Setting Forth Objections and Arguments to the Proposed Findings and Recommendations Issued by United States Magistrate Judge Cheryl A. Eifert Asking This Court to Dismiss this Action with Prejudice and be Removed from the Docket of This Court at this Time* (Document 19) be **OVERRULED**, and that the Petitioner's *Application Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody* (Document 1) be **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: April 14, 2015

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

17